BOUTALL, Judge.
The basic question presented for review is who is the owner of the franchise granted by the City of New Orleans to operate a taxi cab service, along with the trade name, “V-8 Cab Service of V-8 Taxi Cab Service”. There have been a number of law suits brought over the last several years litigating certain ancillary aspects of this basic question, and finally, the matter is before us on the merits.
Otha Hayes was the owner of a franchise granted by the City of New Orleans to operate a taxi cab service known as “V-8 Taxi Cab Service”, using the name “V-8 Cab Service” applied to each taxi cab in a distinctive pattern. He sold the franchise to a corporation named “V-8 Taxi Cab Service, Inc.” for the price of $600 cash. On November 6, 1968 the corporation purportedly sold back to him and his wife the taxi cab franchise and the right to use the name “V-8 Cab Service”. Thereafter, on January 31, 1972, following *567 considerable litigation, John A. Johnson acquired all of the outstanding stock of the corporation through a compromise agreement with Margaret Smith and Curtis Smith. Johnson claims the corporation never sold the franchise and is still the owner. The question narrows itself to the validity of the sale of the franchise and trade name by the corporation to Mr. and Mrs. Hayes.
After a difficult trial over a period of three days, the trial court found that John A. Johnson, the president of the corporation, did not sign the corporate resolution authorizing the sale of the franchise to the Hayes. He declared that the corporation was the sole owner of the franchise and that the Hayes had no right to use it. In his reasons for judgment, the trial judge noted that the record in this case presented a “conglomeration of contradictory testimony” and that some witnesses were not testifying truthfully. He concluded that the testimony of Margaret Smith, the purported owner of all of the stock of the corporation, was not in keeping with normal behavior, and that the actions of John A. Johnson were in keeping with normal behavior. Thus he rendered judgment in favor of the corporation, now wholly owned by Johnson. From this adverse judgment the Hayes have appealed.
An examination of the record convinces us that the statement of the trial judge relating to the testimony herein is a remarkable demonstration of judicial restraint. Quite frankly, based upon ascertainable facts in the record plus references to prior proceedings which have been offered in evidence, it is apparent that the testimony of all of the interested parties herein is to a large degree unworthy of belief. We find it startling to discover that such a number of transactions involving considerable amounts of money, either corporate funds or funds from others which were provided for the corporation, could have been accomplished without any written documents to establish, at least to some degree, the origin of these funds and the repayment where necessary. There is almost a total lack of financial records of the corporation and of those people who claim to have been acting for themselves or for the corporation in the acquisition of real estate in the amount of $11,660, and the purchase of radios and radio operations station in the amount of some $14,000 to $20,000. We fully sympathize with the problems of the trial judge in attempting to analyze and sift the truth from this record in order to render a fair and just judgment to serve the cause of justice. We, of course, are required to give .greát weight to the findings of the trial judge involving the credibility of witnesses, and we do so here.
Our review of the record discloses the following. The business venture was incorporated on. the 9th day of February 1967 by act before Rene Lehmann, Notary Public, under the name and style of “V-8 Taxi Cab Service, Inc.”. 100 shares of stock were issued as follows: John A. Johnson, 50 shares; Herman King, 25 shares; Mrs. Annie Baker, 25 shares. The business was incorporated at the instance of Mrs. Margaret Smith, who retained Mr. Lehmann for the incorporation, and the stock certificates of the three persons above named were endorsed in blank by then (although non-negotiable) and held by Mr. Lehmann throughout the period encompassed herein. However, no changes were made on the books of the corporation, and the stock remained in the name of the three incorporators, who were appointed the officers and board of directors of the corporation and continued to act as such during the period in question.
Mrs. Smith contends that she paid in capital in the amount $1,000, that she really owned all the stock and the business, and simply used the three incorporators so her name would not appear of record. Two of the stockholder-incorporators admit that they put up no money and were only interposed parties. Johnson, however, *568 contends that he put up money and effort in getting the business operating and was to be the manager of the business and is thus owner of his SO shares of stock.
The day after incorporation, February 10, 1967, the corporation purchased the taxi cab franchise then operating at 1519 La Salle Street, New Orleans, under the trade name V-8 Taxi Cab Service from Otha Hayes for the price of $600. While there is a dispute as to who furnished the money for the purchase price, Johnson or Mrs. Smith, the franchise was acquired in the corporate name, and the evidence seems to preponderate that Johnson was the main actor in the acquisition of the franchise. Some three years before, Hayes had owned the franchise and sold it to Moses Jackson under an agreement that if Jackson desired to get rid of the franchise it must be first offered to Hayes for repurchase. Johnson approached Jackson to purchase, and on being informed of this agreement, negotiated the resale from Jackson to Hayes and from Hayes to the corporation.
Shortly thereafter, the corporation purchased a number of radios to be installed in the taxi cabs operated under its name, together with the station equipment to handle its business. Here again, there is a conflict between the testimony of Mrs. Smith and Johnson as to who provided the necessary funds for the acquisition of this equipment. However the evidence would indicate that Johnson as the president and general manager of the corporation at least handled the acquisition of the equipment, and it is conceded that he obtained, and arranged for the installation of, a base station, that is, a high building upon which to place the antenna equipment necessary, with the owners of the Orleans Building.
The corporation negotiated to purchase the premises 1519 La Salle Street wherein it operated thé business, and on March 13, 1967 Johnson as president entered into agreement to purchase the premises from the owners. Accordingly, on June 15, 1967 the real estate was purchased for the sum of $11,660 cash, which was provided by a mortgage in the amount of $8,250, and the balance being cash provided by either Johnson or Mrs. Smith. At this point it might be well to point out that we make no effort to determine who actually provided the cash for these various transactions, although the trial judge believed Johnson, because Johnson and Mrs. Smith have settled their differences of stock ownership and any question of indebtedness between them and the corporation now appears to be moot. We relate these matters because they substantiate the testimony of Johnson and other witnesses that Johnson was generally recognized as the general manager and that he was at all times carrying on the business of the corporation as president and general manager. Since he testified that he received no salary from the corporation, and there is no evidence that he did, this evidence also tends to corroborate his claim of original ownership of 50% of the stock.
In any event the corporation continued to do business under Johnson’s management for over a year without incident until November 1968. On November 6, 1968 there was passed under private signature and acknowledged before a Notary Public, an act of “Sale and Agreement” wherein the corporation sold to Pearl and Otha Hayes for the sum of $600 the taxi cab franchise together with the right to use the name V-8 Cab Service and the good will of the business. It is the validity of this sale which is at issue here, and this is the first corporate transaction of which we are aware that was not signed by Johnson as President, but signed by Mrs. Annie Baker, the Secretary-Treasurer. The appellants, Mr. and Mrs. Hayes, contend that this is a valid sale executed in accordance with a resolution of the Board of Directors of the corporation at a meeting held on October 15, 1968, which is attached to the sale; that they paid the $600 purchase *569 price to Mrs. Smith and exhibit a receipt from her; and that thus they are the owners of the franchise and the trade name, while conceding that they did not purchase any of the other corporate assets. Opposed to this, Johnson claims that the sale is invalid; that no such meeting of the Board of Directors was ever held nor was any corporate authority ever given for such a sale; and that his signature appearing thereon, attesting to the validity of the minutes as President, is a forgery. He further denies that the corporation received any payment for the franchise, but contends the sale being void, the corporation is still the owner of the franchise. We agree that no corporate authority was granted for the sale and that the sale is null and void, and the corporation is still the owner of the franchise.
In support of the validity of the sale, Mrs. Annie Baker testified that Mrs. Smith was the owner of all of the stock of the corporation and at her direction, the attorney for the corporation prepared the necessary resolution for the sale. She insists that the meeting was held and that Johnson signed the document in her presence. As mentioned, Johnson denies such a meeting and his signature, and insists he knew nothing about such a sale and document until he was shown a copy by Hayes at a later date, when Hayes demanded control of the business. The absence of such a meeting is corroborated by Herman King, the other director, who also denies any knowledge of such a meeting and resolution, even though the minutes show that all directors were present. The trial judge made a specific finding of fact that Johnson did not sign the document, and since the establishment of this meeting is based entirely upon the veracity of the three directors, we cannot say that the trial judge erred.
Additionally, we point out that the position of the appellants is such that this transaction was negotiated with Mrs. Smith, whom they considered to be the sole stockholder and owner of the corporation, nevertheless, at this time the books of the corporation showed the stock to be owned by the three original stockholders, and it was not until June 8, 1970 that a change was made on the books. The articles of incorporation provide the method of transferring shares of stock and that no transfer of stock whatever shall be binding upon the corporation until and unless made upon it books, the articles of incorporation further provide that the corporate power of the corporation shall be exercised by a board of directors composed of three persons, two of whom shall at all times constitute a quorum for the transaction of business. Stockholders do not possess the corporate powers such that they may validly sell the principal asset of the corporation, but are relegated only to the election of directors to exercise such authority. It is uncontradicted that at this time the directors were the three original incorpora-tors. In the' absence of two of them, no resolution could be passed.
Whatever may be the equities of this case, in view of the particular facts here involved and the holding of the trial judge, we cannot conclude that the corporation legally divested itself of the taxi cab franchise and trade name, and we conclude that the sale is null and of no effect.
For the reasons hereinabove stated, we are of the opinion that the judgment appealed from should be affirmed.
Affirmed.